Richard D. Rochford
Joseph Lawlor
HAYNES AND BOONE, LLP
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
(T) 212-659-4984
(F) 212-884-9572
richard.rochford@haynesboone.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GALDERMA LABORATORIES, L.P., | 19-cv-4560 |
| Plaintiff, | Jury Trial Requested |
| v. | **COMPLAINT** |
| PHILIP CHERIAN and JERICHO PHARMACY CORP., | |
| Defendants. | |

Plaintiff Galderma Laboratories, L.P. ("Galderma"), by and through its undersigned counsel, alleges as follows against Defendants Philip Cherian ("Cherian") and Jericho Pharmacy Corp. ("Jericho," collectively with Cherian, "Defendants"), upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

**Nature of the Action**

1. Cherian and Jericho have engaged in a healthcare fraud, by which they submitted wholly-fraudulent reimbursement claims for prescription products that they never sold, and bilked Galderma for in excess of $200,000.

2. Galderma is a skin care company that manufactures and sells both over-the-counter and prescription products. Galderma's prescription products include Clobex® Spray,

Capex® Shampoo, Epiduo® Forte Gel, Mirvaso® Gel, Oracea® Capsules, Soolantra® Cream, and Tri-Luma® Cream (each a "Galderma Product").

3. Galderma offers a free Galderma® CareConnect Patient Savings Card ("CareConnect Card") that allows uninsured and commercially-insured patients to purchase Galderma's prescription products for little or no co-pay.

4. When a patient presents their prescription for the Galderma Product, insurance, if any, and the CareConnect Card, the pharmacy dispenses the Galderma Product.  Upon dispensing the Galderma Product to the patient, the pharmacy obtains a co-pay from the patient, set by Galderma, as identified in the CareConnect Card literature.  In addition, the pharmacy seeks reimbursement from the insurance provider, if any, and reimbursement from Galderma.  The amount of reimbursement the pharmacy seeks from Galderma is the difference between the cost the pharmacy purchased the Galderma Product for less the reimbursement it receives from the insurance company and the co-pay paid by the patient.  The CareConnect Card can be used for one or more Galderma Products.

5. Jericho is a pharmacy based in Syosset, New York.  Cherian is the Chief Executive Officer, owner, and pharmacist at Jericho.  Among other things, Jericho sells Galderma Products.

6. From at least 2016 through 2019, Jericho and Cherian have made hundreds of fraudulent CareConnect redemption claims.  Sales data shows that Defendants sought and received more than $200,000 in CareConnect redemptions for Galderma Products that it never sold.  Each of these improper redemptions is not only a breach of the terms and conditions of the CareConnect program but also a fraud on Galderma.

## The Parties

7.  Galderma is a Texas limited partnership whose ultimate owner is a corporation organized under the laws of the State of Delaware and whose place of business is in the State of Delaware. Galderma's principal place of business is 14501 N. Freeway, Fort Worth, TX 76177.

8.  Cherian is an individual who resides in the State of New York. Cherian is the Chief Executive Officer of Jericho.

9.  Jericho is a New York Corporation with its principal place of business at 340 Jericho Tpke., Syosset, New York 11791.

## Jurisdiction and Venue

10.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because this suit is between citizens of different states and the amount in controversy exceeds $75,000.

11.  Venue lies in this District pursuant to 28 U.S.C. § 1391 (b), (c), and (d) because Defendants reside and regularly conduct business in this District, their contacts with this District are more significant than their contacts with the other districts in this state, and a substantial part of the events giving rise to Galderma's claims have occurred and are continuing to occur in this District.

## Facts Relevant to the Claims for Relief

**Galderma's CareConnect Program**

12.  Galderma, founded in 1981, is a skin care company located in Fort Worth, Texas. Galderma's mission is aimed at enhancing the quality of people's lives by focusing on science-based solutions for skin health. Galderma offers a variety of over the counter products, including the well-known Cetaphil® and Proactiv® brands, to help protect, nourish, and enhance skin health. Galderma also offers a variety of prescription products that treat, correct, and restore

issues with patients' skin. Galderma's prescription products include Capex Shampoo, Clobex Spray, Epiduo Forte Gel, Mirvaso Gel, Oracea Capsules, Soolantra Cream, and Tri-Luma Cream.

13. In order to better serve patients using its prescription products, Galderma offers all commercially-insured and uninsured patients use of the Galderma CareConnect program ("CareConnect"). CareConnect is a free program that provides savings on the above-listed Galderma Products when purchased at participating pharmacies. When using CareConnect, insured patients often pay either $0 or $35 for their Galderma prescription. The discounted pricing available to patients who use CareConnect is available on the CareConnect website at https://www.galdermacc.com/pricing-information.

14. In practice, virtually all customers who purchase Galderma Products at participating pharmacies use CareConnect, because the customer can download the CareConnect Card on their phone or the pharmacy can easily download a CareConnect Card for the patient during check-out and offer the patient significant savings.

15. When a pharmacy processes a transaction using CareConnect, it agrees to and accepts the CareConnect Terms and Conditions ("CareConnect T&C") available at https://www.galdermacc.com/sites/default/files/pdf/TermsConditions.pdf.

16. Pursuant to the CareConnect T&C, all pharmacies who use the card agree to the program rules set forth at www.galdermacc.com and the terms and conditions posted at www.mckesson.com/mprstnc. McKesson Corp. ("McKesson"), a leading pharmaceutical distributor, distributes Galderma Products and also administers CareConnect.

17. Because a pharmacy that accepts the CareConnect Card ostensibly paid full price for the Galderma Product but only receives the discounted payment from the patient, the

pharmacy seeks reimbursement from the insured patient's insurance company and Galderma. Where a patient is uninsured, the pharmacy seeks reimbursement from only Galderma.

18. Pursuant to the CareConnect T&C, pharmacies processing transactions for patients using CareConnect submit their reimbursement claims electronically through the program administrator McKesson.

19. After those reimbursement claims are made, McKesson reimburses the pharmacy on behalf of Galderma. The average reimbursement varies – because the patient may be uninsured or insured – but can exceed $400 for a single prescription.

**Jericho and Cherian's Fraudulent Scheme**

20. Jericho is a retail pharmacy owned and operated by Cherian, who is a pharmacist licensed by New York State.

21. From at least 2016 through present, Jericho and Cherian have participated in CareConnect.

22. From 2016 through 2019, Defendants submitted more than 836 CareConnect reimbursement claims. During this time period, Defendants received in excess of $400,000 from Galderma for CareConnect reimbursements.

23. Pursuant to the CareConnect T&C, Defendants may only submit a reimbursement request when: they actually dispense a Galderma Product to the patient; for which a patient has a valid prescription; the patient or pharmacy uses a CareConnect Card; and the Galderma Product is covered by CareConnect.

24. During an audit by Galderma in the Spring of 2019, Defendants provided Galderma with Jericho's own internal purchase data for each Galderma Product covered by CareConnect. Jericho's internal purchase data shows that during the period of 2016 through

5

2019, Jericho only purchased approximately 400 units of Galderma Products. Third-party "867 data" (a method of tracking sales in the drug industry) is consistent with Jericho's internal data and shows that Jericho only purchased approximately 450 units of Galderma Products during that same time period.

25. Thus, while Defendants submitted in excess of 825 CareConnect reimbursement claims from 2016 through 2019, Defendants could not have possibly sold more than the approximately 450 units of Galderma Products that Jericho purchased during that same time period. Accordingly, Defendants submitted hundreds of completely fraudulent reimbursement claims.

26. For example, and more specifically, Defendants' own data shows that during the period of 2016 through 2019, they purchased **19** units of Oracea Capsules (2 in 2016, 4 in 2017, 5 in 2018, and 8 in 2019). However, during that same time period, Defendants sought reimbursement for **66** purported sales of Oracea Capsules (1 in 2016, 25 in 2017, 27 in 2018, and 13 in 2019). Defendants' fraudulent reimbursements claims for Oracea Capsules alone total more than approximately $30,000.

27. Similarly, for example, Defendants reimbursement claims for Epiduo® Forte Gel exceeded their purchases of that product by 2 units in 2016, 87 units in 2017, 72 units in 2018, and 8 units in 2019. Each of those reimbursement claims is fraudulent because Defendants did not purchase corresponding units of that Galderma Product. Galderma paid out more than approximately $84,000 to Defendants as a result of these fraudulent reimbursement claims for Epiduo Forte Gel.

28. Upon information and belief, in order to carry out this fraudulent scheme: (1) Defendants submitted false information relating to a non-existent/phony prescription into their

6

pharmacy adjudication software; (2) such false information was then electronically transmitted to a third party known as the "switch"[1]; (3) the "switch" then indicated to Defendants the amount that the insurance company would reimburse Defendants and/or what Galderma CareConnect would reimburse Defendants and what any remaining balance would be paid by the patient upon dispensing of the Galderma Product; (4) the "switch" then transmitted the false information entered by Defendants to the insurance company, if any, and McKesson (the administrator of CareConnect), seeking reimbursement/payment from the insurance company and/or McKesson for the dispensed Galderma Product.  Payment was then processed from Galderma to Defendants, through McKesson as administrator.

29. Defendants repeated this scheme for each Galderma Product covered by CareConnect over the course of no later than 2016 through 2019 for each instance where Defendants did not purchase a Galderma Product but sought reimbursement for such unpurchased Galderma Product.

30. Upon information and belief, Cherian, pharmacist and CEO of Jericho pharmacy, through his New York state licensed pharmacy submitted the fraudulent CareConnect reimbursement claims described herein.

31. Defendants could not have sold products to their patient customers that Defendants themselves never purchased.

32. Defendants' submitted more than 400 fraudulent CareConnect reimbursement claims.  As a result of these fraudulent reimbursement claims, Galderma paid to Defendants approximately $206,234 to which Defendants are not rightfully entitled.

---

[1] A network "switch" is a third-party provider that routes claims from a pharmacy to the payer.

**First Claim for Relief: Fraud**

33. Galderma repeats the allegations contained in paragraphs 1 through 32 above.

34. As detailed above, Defendants made hundreds of false statements to McKesson, and ultimately to Galderma, in the form of false CareConnect reimbursement claims.

35. Galderma and McKesson relied on Defendants' false CareConnect reimbursement claims to pay out reimbursements to Defendants from Galderma through McKesson.

36. By reason of the foregoing, Galderma has suffered, and will continue to suffer, substantial damages, and Defendants have reaped substantial profits that total no less than $206,234.

**Second Claim for Relief: Breach of Contract**

37. Galderma repeats the allegations contained in paragraphs 1 through 36 above.

38. By using CareConnect, Defendants agreed to be bound by the CareConnect T&C.

39. The CareConnect T&C require, among other things, that reimbursement claims may only be made when a patient presents the CareConnect card and purchases a covered Galderma Product.

40. Defendants breached the CareConnect T&C by submitting false reimbursement claims for which Defendants did not dispense a Galderma Product and for which no patient presented a CareConnect Card.

41. By reason of the foregoing, Galderma has suffered, and will continue to suffer, substantial damages, and Defendants have reaped substantial profits.

**Third Claim for Relief: Unjust Enrichment**

42. Galderma repeats the allegations contained in paragraphs 1 through 41 above.

8

43. Galderma and Defendants engaged in a business relationship in connection with the CareConnect program.

44. Defendants have been wrongfully enriched through their improper use of CareConnect.

45. Galderma has expended significant effort, time, and money to develop CareConnect and has paid out significant reimbursements to Defendants for which they are not entitled.

46. Defendants have unjustly retained the benefits of the use of CareConnect and reimbursement payments to which they are not entitled.

**WHEREFORE**, Galderma respectfully requests that this Court enter judgment in its favor, and against Defendants, as follows:

(A) Enjoining Cherian and Jericho and its officers, directors, agents, employees, successors, assigns and attorneys, and all other persons or entities in active concert or participation with Jericho who receive notice of the injunction by personal service or otherwise, from doing, aiding, causing or abetting the following:

(i) submitting reimbursement claims in connection with CareConnect or any similar program offered by Galderma now or in the future; and

(ii) holding themselves out to the general public as participating in CareConnect or any similar program offered by Galderma now or in the future;

(B) Directing Defendants to notify all Jericho customers for whom Defendants submitted fraudulent CareConnect reimbursement claims that their identities and

        CareConnect information was used by Defendants in connection with their fraudulent scheme;

(C)    Directing Defendants to account for all Galderma Products they have sold and all reimbursement claims they have submitted to CareConnect;

(D)    Directing Defendants to file with the Court and serve upon counsel for Galderma, within thirty (30) days after the entry of the injunctive relief requested in this Complaint, a written report, sworn to under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

(E)    Ordering Defendants to account for and pay to Galderma all profits derived by reason of Defendants' acts alleged in this Complaint;

(F)    Awarding Galderma all actual and consequential damages it has sustained as a result of Defendants' actions;

(G)    Awarding Galderma punitive damages;

(H)    Awarding Galderma its costs of suit, including reasonable and necessary attorneys' fees and expenses for the prosecution and appeal, if any, of this matter;

(I)    Awarding Galderma pre-judgment and post-judgment interest on all sums awarded in the Court's judgment; and

(J)    Granting Galderma such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Galderma hereby demands a trial by jury on all claims and issues triable by a jury.

Dated:  August 7, 2019

          HAYNES AND BOONE, LLP
          *Attorneys for Plaintiff Galderma L.P.*

    By:  s/*Richard D. Rochford*
          Richard D. Rochford
          Joseph Lawlor
          Haynes and Boone, LLP
          30 Rockefeller Plaza, 26th Floor
          New York, New York 10112
          (T) 212-659-4984
          (F) 212-884-9572
          richard.rochford@haynesboone.com
          joseph.lawlor@haynesboone.com